Filed 8/12/26  In re A.K. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re A.K. et al., Persons Coming Under the Juvenile Court Law. | |
| MERCED COUNTY HUMAN SERVICES AGENCY, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> ELIZABETH R., <br><br> Defendant and Appellant. | F090904, F090989 <br><br> (Super. Ct. Nos. 24JP-00090-A & 24JP-00090-B) <br><br> **OPINION** |

-ooOoo-

APPEAL from orders of the Superior Court of Merced County.  Mark V. Bacciarini, Judge.

Elizabeth R., in pro. per., under appointment by the Court of Appeal, for Defendant and Appellant.

Forrest W. Hansen, County Counsel, and Ann Hanson, Deputy County Counsel; Gordon-Creed, Kelley, Holl & Sugerman, Jeremy Sugerman and Anne H. Nguyen, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Appellant Elizabeth R. is the maternal aunt and former caregiver of dependent minor children A.K. and M.K. She, in propria persona, has appealed from: (1) in case No. F090904, the juvenile court's denial of her request to be declared de facto parent of the children; and (2) in case No. F090989, the juvenile court's denial of her Welfare and Institutions Code[1] section 388 petitions requesting visitation with and placement of the children. This court has consolidated the appeals.

Finding appellant has not established reversible error, we affirm the juvenile court's orders.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

### *Initiation of Dependency Proceedings*

In August 2024, dependency proceedings were initiated on behalf of then four-year-old A.K. and then infant M.K. At the time, the children lived with their mother An.K. (mother); M.K.'s alleged father, J.M.; and their maternal grandmother, Ma.K. (grandmother), who was also A.K.'s legal guardian. The whereabouts of A.K.'s alleged father, M.S., were unknown.

On August 14, 2024, the Merced County Human Services Agency (agency) filed a juvenile dependency petition on behalf of both children. The petition alleged A.K. came within the juvenile court's jurisdiction under section 300, subdivisions (a) (nonaccidental physical harm), (b)(1) (failure to protect), (c) (serious emotional damage), and (g) (no provision for support) due to physical and emotional harm and failure to protect perpetrated by mother, grandmother, and M.S. The petition alleged M.K. came within the

---

[1]    All further undesignated statutory references are to the Welfare and Institutions Code.

[2]    This is the most recent of several appeals and writ proceedings from orders made in the underlying dependency case brought by grandmother, mother, and M.K.'s alleged father; and there are others still pending. We limit our recitation of the facts to those relevant to the issues in the present appeal.

court's jurisdiction under section 300, subdivision (b)(1) (failure to protect) due to risk of harm and neglect by mother and J.M.

Appellant was interviewed during the investigation that led to the filing of the petition. She reported concerns with A.K. in grandmother's care, including that grandmother did not regularly bathe A.K., did not place her in a car seat, did not properly feed her, and did not take her to the dentist. She further reported grandmother struggled with untreated mental health issues, abused prescription medication, and did not appropriately protect A.K. from mother.

The children were initially placed in foster care.

On September 12, 2024, the juvenile court conducted a jurisdiction hearing as to M.K. only and sustained the petition as to M.K.

In October 2024, both children were placed with appellant.

On January 21, 2025, the juvenile court conducted a disposition hearing for M.K. and a combined jurisdiction/disposition hearing for A.K. As to M.K., the court declared M.K. a dependent and removed her from her parents' custody. M.K.'s parents were not offered reunification services. As to A.K., the court sustained the petition, declared her a dependent of the court, and removed her from her parents' and grandmother's custody. Her parents were not offered reunification services, and grandmother was offered services pending a psychological evaluation.

On August 19, 2025, the juvenile court conducted a family reunification review hearing as to M.K., at which it terminated reunification services and set a section 366.26 hearing. The reunification period for A.K. and grandmother continued.

***Section 387 Petition to Remove Children from Appellant's Home***

On September 17, 2025, the agency filed a supplemental petition pursuant to section 387.[3] The petition alleged that placement with appellant had not been effective in

---

[3] The court may change or modify a previous order placing a child with a relative after a noticed hearing upon a supplemental petition filed pursuant to section 387. The

the protection or rehabilitation of the children.  Specifically, it was alleged that (1) appellant's minor son had sexually assaulted a minor female neighbor, and there was an ongoing police investigation; (2) appellant engaged in domestic violence with her girlfriend in the children's presence; (3) appellant allowed her girlfriend to live in the home without undergoing the required clearance process; (4) appellant obscured law enforcement and social worker investigation; and (5) it was suspected appellant was allowing unauthorized contact between grandmother and the children.  It was recommended that the children be placed in foster care.  An accompanying detention report detailed the investigation supporting the above allegations.

A contested hearing on detention of the children from appellant was conducted on September 23, 2025.  Counsel for the agency, the children, and A.K.'s alleged father submitted on the petition and accompanying reports.  Counsel for mother, M.K.'s alleged father, and grandmother objected to the children being removed from appellant.  Grandmother's counsel asserted that appellant had a good history, was still RFA approved, and the allegations against appellant's son were not true.

Appellant testified on her behalf, with grandmother's attorney examining her.  She testified that her neighbor brought false allegations against her son due to prejudices toward her son and prior bad history between the neighbor and herself.  She also denied that the individual described as her girlfriend in the petition lived in the home and that she engaged in domestic violence or arguments with her.  She denied allowing grandmother unauthorized contact with the children.

---

petition must contain a concise statement of facts sufficient to support the conclusion that the previous disposition has not been effective in the rehabilitation or protection of the child or, in the case of a placement with a relative, sufficient to show that the placement is not appropriate in view of the criteria in section 361.3.  (§ 387, subds. (a), (b).)  The court uses the preponderance of the evidence burden of proof and need not look at less restrictive alternatives.  (*In re A.O.* (2004) 120 Cal.App.4th 1054, 1061.)

4.

In ruling, the juvenile court found the agency's reporting was credible, appellant was "totally unbelievable," the children were in a dangerous situation, and grandmother had "unfettered access to them."  The court found the children fell within the provisions of section 300, subdivisions (a) and (b)(1).  It found placement with appellant posed a substantial danger to the physical health of the children, and there were no reasonable means to protect them without removing them from appellant's physical custody.  The court placed care of the children with the agency.

***Appellant's Request to be Recognized as De Facto Parent***

On October 16, 2025, appellant filed requests to be recognized as the children's de facto parent.

Appellant stated in her de facto parent statement regarding A.K. that she possessed "knowledge of [A.K.'s] emotional triggers, behaviors, educational progress, and medical needs"; she "underst[oo]d likes and dislikes, sleeping patterns, and what helps calm her down when upset"; she "c[ould] share how [A.K.] responds to different caregivers, teachers, and the therapy methods; and she knew "details about [A.K.'s] history with our family and her connection to our extended relatives."  She contended she and A.K. had a strong bond and further explained she was "not asking for custody through this request only to be recognized as someone who truly knows and loves [A.K.] and can share important information about her needs with the court."

As for M.K., appellant stated that she was "familiar with [M.K.'s] sleep … and feeding schedule, favorite toys, emotional needs, development milestones, and medical history" and "underst[ood] how to calm her when she is upset and how to support her growth and learning."  She further asserted she and M.K. had developed a strong bond and requested to be recognized as de facto parent "so I can continue to participate in her case, provide information about her needs, and help the court make decisions in her best interest."

On October 27, 2025, the juvenile court issued written denials of appellant's requests on the "De Facto Parent Order" Judicial Council (JV-297) form and served them on the parties, as well as appellant. The juvenile court marked box 2, which reads, "The request for de facto parent status is denied." On the preprinted portion of the form which requires the court to mark a box indicating whether it "does" or "does not" "appoint a lawyer to represent the de facto parent," the court marked the box corresponding with "does." The line for the lawyer's name was blank.

On November 4, 2025, the juvenile court conducted a contested reunification review hearing as to A.K. Appellant was not present. Prior to conducting the review hearing, the court stated, "There was … a request for de facto parent status filed by somebody. There was no proof of service. Court denied it. That's … stricken from the Court's file." Following the review hearing, the court terminated reunification services, terminated grandmother's guardianship, and set a section 366.26 hearing as to A.K.

On December 3, 2025, appellant filed a document entitled "REQUEST FOR CLARIFICATION, EXPLANATION, AND RECONSIDERATION REGARDING JV-297 DENIAL OF DE FACTO PARENT STATUS." Appellant requested a written explanation for the denial, clarification on the inconsistency between the indication her request was denied and the indication she was being appointed counsel, and a hearing on her de facto parent request.

### Appellant's Section 388 Petitions

On December 10, 2025, appellant filed a section 388 petition requesting visitation with the children. In the petition, appellant contended that agency social workers had denied her request for visitation since the children had been removed from her home. As for why the request was in the children's best interest, she alleged, "The children lived with me for about one year in my approved RFA home and formed a strong emotional and psychological bond with me. Continued visitation supports their emotional stability,

6.

attachment, and well-being.  Maintaining family connections is required under [sections] 362.1, 361.3 [and] 1600.2."

On December 19, 2025, appellant filed a section 388 petition requesting placement of the children.  As for why the request was in the children's best interest, she asserted, "Placement with a kinship relative with whom the children are bonded or continued visitation is in the children's best interest as explained in the attached declaration."  In the declaration supporting the request, appellant denied any safety concerns in her home. She asserted her RFA certificate remained active and was "currently placed on administrative hold solely due to a pending Right-to-Review."

Appellant further explained that:

"Five allegations were investigated.  Two allegations were substantiated related solely to administrative compliance matters, specifically mandated reporting and unapproved adults residing in the home.  These findings did not involve sexual abuse, physical abuse, or neglect.  One allegation alleging that my mother accessed the children without approval was investigated and determined to be unfounded.  Two allegations were determined inconclusive, including an allegation involving my minor son alleged to have occurred outside the home and an allegation of domestic violence.  There was no evidence, no arrest, and no criminal charges.  CPS determined that no abuse or neglect occurred in my home, and my nieces were not involved in any alleged conduct."

She attached no other documents to her declarations supporting her claims.

The juvenile court set a hearing for January 5, 2026, to determine whether an evidentiary hearing on the petitions should be granted.

At the hearing on January 5, 2026, the agency objected to both petitions and asserted they did not merit an evidentiary hearing.  Minors' counsel concurred with the agency and noted "we did have a full-blown supplemental hearing—supplemental detention on this matter."  Counsel for A.K.'s alleged father M.S. also objected.  Mother's counsel and counsel for M.K.'s alleged father J.M. expressed support for the petitions.

7.

After hearing from the parties, the juvenile court denied the petitions. Appellant, who was present, asked to address the court stating, "I requested the JV-180's to change the court order regarding visitation and placement to request consideration of RFA approval. I am currently still approved. My home is still approved. It's put on hold right now due to a right to review. I submitted all my evidence and documentations. I have currently on me proof of unfounded and inconclusive allegations that my RFA worker did a review on and the evidence." The court confirmed appellant's requests were denied. Appellant asked why, to which the court responded, "Because the status quo is appropriate."

## DISCUSSION

We start our discussion by noting the burden is on the appellant to overcome the presumption of correctness and to demonstrate reversible error. (*Jameson v. Desta* (2018) 5 Cal.5th 594, 608–609.) To overcome this presumption, the appellant must support each contention with argument and citation to authority that demonstrates prejudice resulting from the error. (*Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277; *Keyes v. Bowen* (2010) 189 Cal.App.4th 647, 655–656.) A brief must contain reasoned argument and legal authority to support its contentions, or the court may treat the claims as forfeited. (Cal. Rules of Court,[4] rule 8.204(a)(1)(B); *People v. Stanley* (1995) 10 Cal.4th 764, 793.) These requirements apply equally to appellants who represent themselves on appeal. (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246–1247; *Stebley v. Litton Loan Servicing, LLP* (2011) 202 Cal.App.4th 522, 524; see *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [appellate court will not develop appellant's arguments for them].)

---

[4] All further rule references are to the California Rules of Court.

## I.  Denial of De Facto Parent Request

Appellant contends she was denied de facto parent status "without notice, hearing, findings, or opportunity to cure an alleged procedural defect."  She requests remand for the juvenile court to conduct a hearing on her request to be recognized as a de facto parent.

We acknowledge the juvenile court's handling of appellant's de facto parent request may have caused some confusion.  On the written orders denying the requests, the box was checked suggesting that the court was appointing counsel to appellant.  At the November 4, 2025 hearing, at which appellant was not present, the juvenile court explained the requests were denied for lack of proofs of service and struck the requests from the file.  Appellant later filed what appeared to be an ex parte request for clarification regarding the ambiguity in the denials which did not seem to be addressed by the juvenile court.  Despite any irregularities, we do not find appellant has established error.

First, appellant contends that rules 5.502(10), 5.530, and 5.534(e) "contemplate fair procedure and an opportunity to correct service defects," and "[s]ummary denial [of her request] without notice or opportunity to cure violated these procedural safeguards."  As respondent points out, none of the rules appellant cites require the court to provide an "opportunity to correct service defects."

Next, appellant contends her due process rights were violated when she was denied a hearing on her request.  Appellant has not established she had a due process right to notice and an opportunity to be heard in relation to her request.  The case she cites—*In re Kieshia E.* (1993) 6 Cal.4th 68—stands for no such proposition.[5]  To the contrary, one court has suggested (in dictum) that a de facto parent request can be denied

---

[5]     *In re Kieshia E.*, *supra*, 6 Cal.4th 86 stands for the proposition that nonparents who have perpetrated abuse onto a minor dependent child cannot be afforded de facto parent status.  (*Id.* at pp. 79–80.)

9.

without a hearing, even if it makes a prima facie case supporting the request. (*In re R.J.* (2008) 164 Cal.App.4th 219, 223–224.)

Finally, appellant contends that, as the maternal aunt and prior caregiver, she "falls within the statutory kinship framework of … section 361.3." Section 361.3 provides that preferential consideration shall be given to requests for placement of dependent children by relatives, and appellant has not explained how it applies to requests for de facto parent status, which does not directly relate to placement. (See *In re P.L.* (2005) 134 Cal.App.4th 1357, 1361.)

To the extent the juvenile court erred in any way in how it handled the denial of appellant's request, appellant has not established she suffered prejudice. Procedural errors by juvenile courts require reversal only if they result in a " 'miscarriage of justice.' " (*In re Brianna S.* (2021) 60 Cal.App.5th 303, 315.) "An order does not result in a miscarriage of justice if the court's order is 'substantively correct,' even if the court 'committed' a 'procedural error' along the way." (*Ibid.*) Here, appellant's request was appropriately denied.

The person seeking de facto parent status bears the burden of proving by at least a preponderance of the evidence that they meet the criteria for receiving de facto parent status. (*In re Patricia L.* (1992) 9 Cal.App.4th 61, 67.)

A de facto parent is "a person who has been found by the court to have assumed, on a day-to-day basis, the role of parent, fulfilling both the child's physical and psychological needs for care and affection, and who has assumed that role for a substantial period." (Rule 5.502(10).) De facto parent status affords "standing to participate as a party in the dispositional hearing and any hearing thereafter at which the status of the dependent child is at issue" and the ability to be present at the hearing; be represented by counsel; and present evidence. (Rule 5.534(a)(1)–(3).) De facto parents have no right to reunification services, visitation, custody, or continued placement of the child. (*In re P.L., supra*, 134 Cal.App.4th at p. 1361.) "The key reason for affording de

facto parents standing to appear and participate is so they may provide critical information that assists the court in determining what disposition is best for the child." (*In re A.F.* (2014) 227 Cal.App.4th 692, 701.) Once granted, a person's de facto parent status ends only when the dependency is terminated or a changed circumstance no longer supports the status, such as when a psychological bond no longer exists between the adult and the child or when the de facto parent no longer has reliable or unique information regarding the child that would be useful to the juvenile court. (*In re A.F.*, at p. 700; *In re Brittany K.* (2005) 127 Cal.App.4th 1497, 1513–1514.)

"The denial of a petition for de facto parent status is reviewed for abuse of discretion. [Citation]. 'In most cases, the lower court does not abuse its discretion if substantial evidence supports its determination to grant or deny de facto parent status.' " (*In re Jacob E.* (2004) 121 Cal.App.4th 909, 919.)

"The factors courts generally consider for determining de facto parent status include 'whether (1) the child is "psychologically bonded" to the adult; (2) the adult has assumed the role of a parent on a day-to-day basis for a substantial period of time; (3) the adult possesses information about the child unique from other participants in the process; (4) the adult has regularly attended juvenile court hearings; and (5) a future proceeding may result in an order permanently foreclosing any future contact [between the adult and the child.]' " (*In re Bryan D.* (2011) 199 Cal.App.4th 127, 141.) "An applicant who otherwise qualifies as a de facto parent may be denied that status by acting in a manner fundamentally inconsistent with the role of a parent." (*In re Merrick V.* (2004) 122 Cal.App.4th 235, 257.)

Here, appellant has not established she was entitled to de facto parent status at this stage of the proceedings. Less than a month prior to her request, there had been a contested hearing regarding whether to remove the children from her, during which the court found there was a substantial danger to the physical health of the children in their placement with appellant and that appellant was "totally unbelievable." While appellant

11.

clearly had placement of the children for a substantial amount of time and cares for the children, the record does not support that she acted consistently in the role of a parent given the court's section 387 findings and orders. We acknowledge that appellant disagrees with these findings, but they were not appealed from to our knowledge and are now final. Appellant has also not explained how, at this stage of the proceedings, she would be able to provide unique and reliable information regarding the children's status as dependent children.

For the above reasons, we find appellant has not established reversible error.

## II.     Denial of Section 388 Petitions

Appellant also contends the juvenile court erred by denying her section 388 petitions requesting visitation with and placement of the children without a hearing. We disagree.

A party petitioning the court to modify a prior dependency order pursuant to section 388 must show the existence of changed circumstances or new evidence justifying the proposed change and that the proposed change is in the best interests of the child. (§ 388; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) A petitioner need only make a prima facie showing of these elements to trigger the right to an evidentiary hearing, and courts must liberally construe a section 388 petition in favor of its sufficiency. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309–310; see rule 5.570(a).) "However, if the liberally construed allegations of the petition do not make a prima facie showing of changed circumstances and that the proposed change would promote the best interests of the child, the court need not order a hearing on the petition." (*In re Zachary G.* (1999) 77 Cal.App.4th 799, 806.) In determining whether the petition makes the necessary showing, the court may consider the entire factual and procedural history of the case. (*In re Jackson W.* (2010) 184 Cal.App.4th 247, 258.)

We review the juvenile court's summary denial of appellant's section 388 petitions for abuse of discretion. (*In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1079.) The denial

12.

must be upheld unless we can determine from the record that the juvenile court's decision "exceeded the bounds of reason by making an arbitrary, capricious or patently absurd determination." (*In re Marcelo B.* (2012) 209 Cal.App.4th 635, 642.) When two or more inferences can reasonably be deduced from the facts, we have no authority to substitute our decision for that of the juvenile court. (*In re Brittany K.*, *supra*, 127 Cal.App.4th at p. 1505.)

Appellant contends she was entitled to an evidentiary hearing, correctly asserting that petitions must be liberally construed in favor of granting a hearing. In her opening brief, she does not acknowledge, however, that if the petition does not state a prima facie case establishing the required elements, the court is not required to set an evidentiary hearing. Appellant does not explain with any reasoned argument in her opening brief how her petitions made a prima facie case warranting an evidentiary hearing and thus has not established reversible error. We note she attempts to do so in her reply brief, but we generally do not consider points raised for the first time in a reply brief absent a showing of good cause, which appellant does not make. (*Varjabedian v. City of Madera* (1977) 20 Cal.3d 285, 295, fn. 11.)

In any event, the juvenile court's statement that the status quo was appropriate indicates to us that it, at the least, did not find appellant had made a prima facie showing that the requests were in the best interest of the children. This was appropriate and not an abuse of discretion. The children were placed together with another relative and were stable, they had been removed from appellant's home only three months earlier based on the court's findings that appellant posed a danger to them and could have reasonably determined appellant's section 388 petitions did not adequately address them, and neither the agency's attorney nor the children's attorney were in support of the requests (see § 317, subd. (c)(2) ["[a] primary responsibility" of minors' counsel "shall be to advocate for the protection, safety, and physical and emotional well-being of the child"].)

13.

The arguments made for the first time in appellant's reply brief do not compel us to come to a different conclusion. She contends she made a prima facie case that her requests were in the children's best interests by alleging that she cared for the children for 11 months and had a strong bond with them. Appellant substantially discounts the recent factual findings the juvenile court made in connection with the section 387 petition removing the children from her home. It appears to us she is seeking to relitigate the findings and orders made during the section 387 proceedings, which, as we have stated above, to our knowledge have not been appealed from and are now final.

For the above reasons, we find appellant has not established reversible error.

## DISPOSITION

The juvenile court's orders from which appellant appeals are affirmed.


DE SANTOS, J.

WE CONCUR:


LEVY, Acting P. J.


FRANSON, J.